DIXON, Judge.
Two cases were consolidated for trial. The first, bearing number 186,194 in the district court, was a suit for annulment brought by the husband, claiming that his wife had been previously married and not divorced. The second suit, bearing number 187,435 in the district court, is a suit by the husband for separation based on allegations of cruel treatment.
In the first suit, No. 186,194 in the district court, the defendant wife reconvened for a separation for abandonment and cruel treatment. The husband changed attorneys twice, and the earlier suit, No. 186,194 in the district court was nonsuited before the trial of the consolidated cases.
In the second suit the defendant wife reconvened, praying for a separation on the same grounds as alleged in the other suit.
There was judgment in the district court in favor of the plaintiff husband, granting him a separation. In the written opinion of the district court, the husband’s contention that his wife cursed him and verbally abused him and hit him with a pop bottle was sustained. The trial court found that the abuse was cruel treatment that rendered their living together insupportable.
We agree with the findings of the trial court that the appellant, Acteria Price, failed to prove either that she had been *117 abandoned without cause, or that her husband had been guilty of cruel treatment that rendered living together insupportable. It is true that Acteria had been committed by the coroner for treatment of mental illness on eight occasions in the last eleven years. It is also true that after her release from Central Louisiana State Hospital on the last occasion (the actual dates are in dispute), she was brought to the matrimonial home by her husband and there deposited. He had decided that he would not attempt to live with her again. The record does not support the wife’s contention that this withdrawal from the common dwelling was “without lawful cause.” (Civil Code Article 143). The testimony shows that Acteria was given to the frequent use of abusive language toward her husband, and that her conduct in public was on occasion disturbing and alarming. The history of this couple, marital and mental, justified the husband’s decision.
However, we are unable to conclude from the record that the acts complained of by the husband constituted cruel treatment which rendered their living together insupportable. The specific acts of which the husband complains occurred after he had made the decision to separate and was actually living separate and apart from his wife. He claims that he was verbally abused and was struck with a pop bottle in his place of business at the end of October, 1968. These acts, in some cases, would support a judgment of separation. However, he testified that he and his wife had not lived together since the last time he had her committed to the Central Louisiana State Hospital. When she was released from the hospital, he had brought her to the family dwelling, and had promised to pay her $20.00 a week for her support, refusing at that time to live with her any further. When asked specifically why he separated from his wife, he replied that he just couldn’t go to his home and rest in peace, and gave a rambling narration about his decision to terminate the marital relationship.[1]
His testimony first indicated that he had been notified by the Veterans Administration that there was doubt about the validity of his marriage at a time just prior to filing the action to annul the marriage. In his later testimony, he stated that the letter from the “government” about his wife’s previous marriage had been received about three years before.
The husband’s testimony, in this case, does not establish that the cursing and the pop bottle incident constituted such cruel treatment that it would have destroyed the marital relationship, if it had not already been terminated by the husband.
Appellant-wife complains that the trial court awarded her only $500.00 attorneys’ fees, the same amount awarded to the husband. Her contention that she *118 should be awarded $1500.00 because the husband’s attorneys are the third to represent him in these suits is not valid. The award for attorney’s fees is to the litigant, not to the lawyers. There is no indication that the value of legal services here rendered is greater on one side or the other. Nevertheless, the husband did not pray for attorney’s fees, and for that reason could not recover, if he were otherwise entitled. When the wife fails in her suit for separation, the community is intact, the husband is responsible for her lawyer’s fees as a community obligation (Talbert v. Talbert, 199 La. 882, 7 So.2d 173 (1942)) and she cannot obtain a judgment against him, except as specifically provided by statute.
Only one judgment was rendered in the two cases by the district court. We will render separate judgments. Plaintiff-husband had nonsuited his nullity action, and the wife had reconvened for a separation.
For these reasons, the judgment of the district court in No. 11,311 (No. 186,194 in the district court) is affirmed, at the cost of the appellee, Johnnie B. Price.

. “A. When she came out the hospital the last time, I gave her — she asked me for a trip, and I gave her a trip to California. I give her $200.00 to get a round trip ticket. I sent her money while she was out there, she came hack, she stayed a little while, and she caught the train back to California. She stayed six months; she come back and she stayed a few more weeks and she — each time, she left my car — the first time she left my car at the TP station; the next time she left my car at the airport, and while this was going on — you see, I got this letter, I don’t know where the letter is, from the Government, I went to check on my GI Insurance, and they wrote me a letter and told me that they couldn’t find nowhere in the courthouse that she had legal separation; then that’s when I came to the courthouse. I said, ‘Well, she’s in California, no need of me living with a woman, and she is out there and I’m here, that just shows she don’t want to he with me and I’m not legally married to her,’ so that’s where I got this information from on the record.” (Testimony of Johnnie B. Price, Record, page 193).
“Q All right; and what caused you to leave ?
“A Well, it just, constantly, I’d go home, I’d be tired, and I just couldn’t sleep, it was just a curse all the time until I would go to sleep.” (Testimony of Johnnie B. Price, Record, page 195).